IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 8:05CR118 |
| ) | |
| vs. ) | REPORT AND |
| ) | RECOMMENDATION |
| STEVEN CHANEY, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion of the defendant Steven Chaney (Chaney) to suppress (Filing No. 16). Chaney is charged in the indictment with possession with intent to distribute five or more grams of a substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). **See** Filing No. 1. Chaney seeks to exclude all evidence seized by law enforcement officers at his residence on January 19, 2005. Specifically, Chaney argues police officers peered into his window and such action constituted an unreasonable search under the Fourth Amendment.

The court held an evidentiary hearing on Chaney's motion on May 18, 2005. Omaha Police Department (OPD) Officer Joseph E. Baudler (Officer Baudler), Investigator James A. Hall (Investigator Hall), an investigator with the Federal Public Defender's office, Wynnette Floyd (Ms. Floyd), and Chaney testified at the hearing. The court received into evidence the affidavit and application for the search warrant, and the search warrant (Exhibit 1), and four photographs of the Chaney residence (Exhibits 101-104). The transcript for the hearing was filed on May 26, 2005 (TR.). Chaney filed a brief in support of the motion to suppress (Filing No. 17). The government did not file a pre-hearing brief, but filed a post-hearing brief in opposition to Chaney's motion (Filing No. 25). Chaney also filed a post hearing brief in support of the motion (Filing No. 26) on June 9, 2005, at which time the motion was deemed submitted.

## FINDINGS OF FACT

On January 19, 2005, at approximately 8:35 p.m., Officer Baudler[1] was driving an unmarked police vehicle with Officer Scott Beran (Officer Beran) (TR. 4-5). A call came over the dispatch radio, originating from an anonymous male caller, involving an identified woman yelling for assistance and being held against her will by "Steven Chaney" at a residence on Manderson Street (TR. 5, 34-35). Uniformed officers in two vehicles were dispatched to the address to investigate the situation (TR. 5-6, 27-28). Officer Baudler testified he was nearby and because the call seemed to be "kind of high priority," he and Officer Beran went to the address (TR. 5). However, Officer Baudler had no prior experience with Chaney or the address involved (TR. 36).

Upon arrival at the Manderson Street residence, Officers Baudler and Beran approached the house on foot (TR. 6). The uniformed officers had not arrived (TR. 7). Officer Baudler heard no noise coming from the home (TR. 6). Officer Baudler went around to the east side of the house to "assess the situation" (TR. 6, 22). During the hearing, Officer Baudler did not remember whether or not there was a fence around the property, however Investigator Hall[2] testified a fence surrounds the entire premises of the Manderson Street residence (TR. 61).

Officer Baudler looked into a window near the enclosed front porch on the east side of the residence (TR. 7; Exhibit 101). During the hearing, Officer Baudler could not remember whether the window shades were up or down on January 19, 2005, but stated he could clearly see into the residence (TR. 40-41). Investigator Hall testified there is a crack in the blinds, which allows for an unobstructed view, even when the blinds are closed (TR. 61-62; Exhibit

---

[1]Officer Baudler has been an OPD police officer for sixteen years (TR. 3). Officer Baudler is currently assigned to the Northeast Precinct gang suppression unit where he has worked in the gang suppression unit for one year (TR. 3-4).

[2]Investigator Hall testified he had been employed for nine years as an investigator with the Federal Public Defender's office (TR. 58-59). Prior to that time, he worked for the United States Marshal Service for twenty-four years (TR. 59). His duties at the Federal Public Defender's office include interviewing witnesses, visiting crime scenes, taking photographs, and preparing reports (TR. 59). Investigator Hall was present on April 6, 2005, when the photographs (Exhibits 101-104) of the residence were taken. (TR. 59-60).

102). Ms. Floyd[3] testified she never saw the blinds up on the particular window Officer Baudler claimed to have looked through (TR. 76). Chaney also testified that, on January 19, 2005, the blinds were shut when police claimed to look through the window (TR. 72). Chaney stated the blinds had been broken for about three years and would not open (TR. 72-73). Officer Baudler observed two men, one of whom appeared to be holding a plastic bag of crack cocaine (TR. 7). At the hearing, Officer Baudler identified the man holding the bag as the defendant, Chaney (TR. 7). Chaney was seated on a sofa (TR. 41; Exhibit 102).

Uniformed Officer Tom Queen (Officer Queen) arrived and walked up to the house (TR. 9). While still peering through the window, Officer Baudler observed the men inside move towards the door, but Chaney walked back to the table, picked up the bag of cocaine and placed it in his pocket (TR. 9). Chaney then opened the door to Officer Queen, but did not step onto the enclosed front porch (TR. 9-10, 47). Officer Baudler moved to the enclosed front porch where Chaney and Officer Queen were located (TR. 9-10). Officer Baudler instructed Chaney put his hands on the wall, reached in to Chaney's pocket to retrieve the cocaine and placed Chaney in handcuffs (TR. 10). The officers informed Chaney of the reason for their presence and requested permission to check the house to make sure no one was detained inside (TR. 10-11). Chaney gave the officers permission to look for people in the house (TR. 11). The officers entered the house, performed a sweep, and found no one (TR. 11). While in the house, the officers observed a box of sandwich bags, which are commonly used to package street drugs, on a kitchen table, but found no contraband (TR. 11-12; 46).

After performing the protective sweep, the officers informed Chaney of his **Miranda** rights (TR. 12). Officer Baudler described Chaney as "rambling constantly," but Chaney did not terminated questioning or request an attorney be present (TR. 13). Chaney did not appear to be under the influence of any drugs or physical ailments, but did appear to understand the officers (TR. 13-14). Officer Baudler requested permission to conduct a complete search of the premises, however Chaney refused (TR. 14). Officer Baudler left Chaney with other

---

[3]Ms. Floyd is a friend of Chaney who visited Chaney's house approximately "once every two weeks" between August 2004 and January of 2005 (TR. 66).

officers and applied for a search warrant, which a Douglas County Nebraska District Court Judge signed (TR. 14-16; Exhibit 1).

After approximately an hour, Officer Baudler returned to Chaney's residence with the search warrant and conducted a search of the house (TR. 16-17). The search resulted in seizure of a half ounce of crack cocaine (TR. 17). Although previously denying involvement, as the officers transported Chaney to the police station, Chaney began to offer information regarding other individuals involved in the sale of crack cocaine (TR. 18-20). Chaney directed officers to various locations of previous drug purchases (TR. 20-21). The officers then returned Chaney to his home after being assured of his cooperation (TR. 22).

## ANALYSIS

Chaney argues Officer Baudler conducted an unconstitutional search of his residence when Officer Baudler peered through a gap in the blinds of a window accessible only from the enclosed side yard. Chaney argues such warrantless searches are presumptively unreasonable. Further, Chaney argues no exigent circumstances existed to justify the warrantless search, because the dispatch call originated from an anonymous caller and the officers' observations upon arrival did not suggest an emergency. Thus, Chaney argues, all evidence derived from the initial unconstitutional search should be suppressed, including the seizure of cocaine from Chaney and contraband found based upon the search warrant.

The Fourth Amendment prohibits "unreasonable searches and seizures" and assures "the right of the people to be secure in their persons, houses, papers, and effects." "[T]he 'touchstone of the Fourth Amendment is reasonableness.' Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." ***Ohio v. Robinette***, 519 U.S. 33, 39 (1996) (**citing *Florida v. Jimeno***, 500 U.S. 248, 250 (1991)). "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." ***Payton v. New York***, 445 U.S. 573, 589-90 (1980) (citations omitted); **see *also United States v. Vance***, 53 F.3d 220, 221 (8th Cir. 1995). "It is a well-established constitutional principle that

4

law enforcement officers may not enter a person's home without a warrant unless the entry is justified by exigent circumstances or the consent of the occupant." ***United States v. Conner***, 127 F.3d 663, 666 (8th Cir. 1997) (**citing *Steagald v. United States***, 451 U.S. 204, 211 (1981)). The Fourth Amendment protections of a home extend to "the curtilage-the area immediately surrounding a dwelling house-from unreasonable warrantless searches." ***United States v. Gerard***, 362 F.3d 484, 487 (8th Cir. 2004) (**citing *United States v. Dunn***, 480 U.S. 294, 300-04 (1987).

"A warrant is not required for a search under the Fourth Amendment when exigent circumstances exist. Exigent circumstances exist if a reasonable law enforcement officer could believe that a person 'is in need of immediate aid.'" ***United States v. Chipps***, 410 F.3d 438, 442 (8th Cir. 2005) (**citing *Mincey v. Arizona***, 437 U.S. 385, 392-93 (1978)). "In evaluating whether a warrantless entry was justified by exigent circumstances, we consider the circumstances that confronted the police at the time of the entry." ***United States v. Leveringston***, 397 F.3d 1112, 1116 (8th Cir. 2005).

"As with most issues arising under the Fourth Amendment, we apply an objective standard to evaluate the reasonableness of an assertion that exigent circumstances justified a warrantless entry." ***Leveringston***, 397 F.3d at 1116. A court must evaluate what an objectively reasonable officer on the scene could have believed, for if such an officer would have had sufficient grounds to believe there was an exigency, then the Fourth Amendment did not require a warrant, and the suspect's constitutional rights were not violated by a warrantless entry. Additionally, "[w]hen the police come on to private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment." 1 Wayne R. LaFave, ***Search & Seizure***, § 2.3(f) at 600-03 (4th ed. 2004) (footnotes omitted). "The plain view doctrine allows law enforcement officers to seize evidence without a warrant when the initial intrusion is lawful, the discovery of the evidence is inadvertent, and the incriminating nature of the evidence is immediately apparent." ***United States v. Raines***, 243 F.3d 419, 422 (8th Cir. 2001).

In *Chipps*, an officer followed a trail of blood to a blood soaked sweatshirt located within the curtilage of the defendant's home. *Id*. The Eighth Circuit found this search and seizure did not violate the Fourth Amendment because the exigent circumstances exception justified the warrantless search. *Id*. at 442-43. The court reasoned the officer could have reasonably believed a person's life was in danger after seeing a trail of blood, indicating the existence of exigent circumstances. *Id*.

Although the officers in this case did not see a trail of blood leading to the side window of the residence, the officers had already received information about a woman in need of assistance. The defendant contends the officers's conduct was based on an anonymous call, which was uncorroborated. Therefore, according to the defendant, based on the anonymous call and the officers observations upon arrival, the officers had no basis to apply the emergency exception to the warrant requirement. Further, the defendant argues the officers should have immediately gone to the front door and alerted the occupants of their presence, rather than enter the side yard and peer through a window. However, the caller had given information regarding the residence, the defendant and the alleged victim during the emergency call. After receiving a call regarding a woman held against her will at the defendant's residence, police officers could reasonably have believed a person's life was in danger, regardless of the lack of corroborating noise at the scene. This reasonable belief allowed officers to enter the residence or its curtilage without a search warrant and without violating Chaney's Fourth Amendment rights. **See *United States v. Cunningham***, 133 F.3d 1070, 1072 (8th Cir. 1998) (stating that officers had a right to enter apartment in response to 911 call that person within apartment was being held against her will). Thus probable cause and exigent circumstances justified Officer Baudler's presence on Chaney's property.

Once on the property, the "plain-view doctrine" justifies the officers' seizure of Chaney and the bag of crack cocaine. "Pursuant to the plain-view doctrine, a law enforcement officer may seize an object without a warrant if the officer did not violate the Fourth Amendment in reaching the place from which the object could be plainly viewed, 'the object's incriminating character is immediately apparent, and the officer has a lawful right of access to the object itself.'" *Id*. at 442 (**quoting *Collins v. Bellinghausen***, 153 F.3d 591, 596 (8th Cir. 1998)).

The plain-view doctrine justifies Officer Baudler's seizure of the bag of crack cocaine. The legal analysis is not dependant on a credibility determination, however to the extent a credibility determination is needed, the court finds Officer Baudler more credible than the other witnesses. This determination is made based upon each of the witnesses' demeanor during the hearing, intelligence, memory, motives, general reasonableness and consistency with other testimony. Although the blinds were probably closed, gaps were evident in the photographs and Officer Baudler was in a position which would have enabled him to see into the residence. Officer Baudler legally arrived at a place from which he could see the crack cocaine (the window) and the incriminating nature of a bag of crack cocaine was obvious. Thus Officer Baudler's seizure of the crack cocaine was lawful. Additionally, since the court has already found the defendant's residence was not subject to an illegal search, neither the seizure of the cocaine nor the evidence obtained through execution of the facially valid search warrant need be suppressed as the fruit of an initial illegal search and should not be suppressed under ***Wong Sun v. United States***, 371 U.S. 471 (1963). Accordingly,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLION that** Steven Chaney's motion to suppress (Filing No. 16) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 5th day of August, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge