IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:05CR118 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| STEVEN CHANEY, | ) | |
| | ) | |
| Defendant. | ) | |

Before the court is the objection of defendant Steven Chaney, Filing No. 30, to Magistrate Judge Thomas D. Thalken's report and recommendation, Filing No. 27. The defendant contends the magistrate judge erred in finding (1) exigent circumstances existed justifying the officers entering of the defendant's curtilage and Officer Baudler's peering through the defendant's window, and (2) the plain view doctrine justified the seizure of cocaine in the possession of the defendant. Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a de novo review of the record, including the transcript of the suppression hearing, Filing No. 24 (hereafter, "Tr."). The court finds the defendant's objections should be overruled.

**Background**

The magistrate judge's statement of the facts is detailed and accurate, so the court need not engage in a lengthy recitation. Briefly, on January 19, 2005, at approximately 8:35 p.m., Officer Joseph E. Baudler[1] ("Officer Baudler") and Officer Scott Beran ("Officer Beran") of the Omaha Police Department received a report of a woman being held against

---

[1] At the time of this incident, the Omaha Police Department had assigned Officers Baudler and Beran to the Northeast Precinct gang suppression unit. Officers Baudler and Beran, on the day in question, traveled to the defendant's residence in an unmarked police vehicle not wearing police uniforms. (Tr. 3-4.)

her will at the residence of Steven Chaney ("defendant"). An anonymous caller reported the tip. (Tr. 4:18-5:17; 34:17-18.)

After waiting approximately one minute and 48 seconds, Officers Baudler and Beran radioed dispatch informing the dispatcher they too were responding to the defendant's residence and asked for clarification of the defendant's name. (Tr. 35:6-25.) At the suppression hearing, Officer Baudler testified that he had no prior experience with the defendant or his residence. (Tr. 36:4-8.)

Officers Baudler and Beran arrived at the defendant's residence first, preceding two other uniformed officers dispatched to investigate the anonymous tip. (Tr. 5:13-14; 7:8-10.) Upon arrival, the officers approached the house on foot and entered onto the curtilage of the defendant's home. (Tr. 6:8-14.) After approaching the home, Officer Baudler moved to the east side of the residence to assess the situation. (Tr. 22:17-22.)

While on the east side of the home, Officer Baudler peered into the defendant's residence through a window located near the home's enclosed front porch. (Tr. 7:13-14; Ex.101.) Officer Baudler testified that he could not remember whether the shades on the defendant's window had been drawn, but he does remember being able to clearly see into the residence. (Tr. 40:14 - 41:2.) During the hearing, investigator James A. Hall testified to the existence of a crack in the defendant's blinds which allows for an unobstructed view into the home, even when the blinds are drawn. (Tr. 62: 9-25.) In addition to Mr. Hall's testimony, Ms. Wynnette Floyd, who is a friend of the defendant, testified from August 2004 to January 2005 she never saw the blinds up on the window Officer Baudler claimed to have looked through. (Tr. 66-67.) The defendant also testified to the blinds being up

on January 19, 2005. (Tr. 72-73.) He further testified to the blinds being broken for the past three years causing them to remain up during that time. (Tr. 72-73.)

While looking through the window, Officer Baudler, a sixteen-year veteran of the Omaha Police Department, observed two men, one of whom sat on a sofa and held what appeared to the officer to be a plastic bag of crack cocaine. (Tr. 7:17-19; 41:23, Ex.102.) At the hearing, Officer Baudler identified the defendant as the man in possession of the plastic bag. (Tr. 7:20-25; 8:1.) While Officer Baudler peered through the window, uniformed Officer Tom Queen, also of the Omaha Police Department, arrived on the scene and approached the house. (Tr. 9:3-11.) Officer Baudler watched the defendant move towards the door, only to return to a table and place the bag of cocaine in his pocket before opening his door to Officer Queen. (Tr. 9:5-23.)

Upon the opening of the door, Officer Baudler entered the enclosed porch to join Officer Queen and the defendant. (Tr.10:1-7). Officer Baudler instructed the defendant to place his hands on the wall at which point he cuffed the defendant and retrieved the cocaine located in the defendant's pocket. (Tr.10:8-11.) The officers informed the defendant of the anonymous call and asked permission to sweep the residence in order to search for the alleged victim. (Tr. 10:25-11:7.) The defendant granted permission for the sweep. (Tr.10:25-11:7.)

After performing a protective sweep and a search for the alleged victim, the officers advised the defendant of his *Miranda* rights and asked if they could search his home. (Tr. 11:2-3; 12:9.) The defendant refused consent. (Tr. 14:10-18.) After obtaining a warrant, Officer Baudler returned to the defendant's residence and conducted a search. (Tr. 16:20-

25; 17:1-8.) The search resulted in an additional seizure of one half ounce of crack cocaine hidden in the defendant's residence. (Tr. 17:10-15.)

## Legal Analysis

### A. Exigent Circumstances Justifying Officers Entering on and Searching Defendant's Property

The magistrate judge found probable cause and the existence of exigent circumstances that justified the presence of Officer Baudler on the defendant's property. The magistrate judge reasoned exigent circumstances existed allowing the officers to enter the defendant's curtilage and peer through the defendant's window without violating the defendant's Fourth Amendment rights, because the officers reasonably believed the alleged victim's life might be in danger. The defendant objects to the magistrate judge's finding, contending that an uncorroborated and anonymous telephone report does not provide particularized facts and circumstances rising to the level of exigent circumstances. Therefore, argues the defendant, the officers' presence on the defendant's curtilage, along with Officer Baudler's peering through the defendant's window, constitutes a violation of the defendant's Fourth Amendment protections. I find the defendant's argument unpersuasive.

The Fourth Amendment protects persons from "unreasonable searches and seizures" and guarantees "the right of the people to be secure in their persons, houses, papers, and effects." U.S. Const. amend. IV. "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance of the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590 (1980). "In applying the exigent circumstances doctrine, the burden is on the state to show the entry is within the exception, and an objective standard is used to evaluate the reasonableness

4

of the officer's belief that exigent circumstances existed." *United States v. Selberg*, 630 F.2d 1292, 1295 (8th Cir. 1980) (*citing Root v. Gauper*, 438 F.2d 361, 364 (8th Cir. 1971)). "In evaluating whether a warrantless entry was justified by exigent circumstances, we consider the circumstances that confronted the police at the time of the entry." *United States v. Leveringston*, 397 F.3d 1112, 1116 (8th Cir. 2005). An example of an exigent circumstance that may justify entry without a warrant is when the police "reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona*, 437 U.S. 385, 392 (1978).

The defendant argues an anonymous call, coupled with a lack of noise at the scene corroborating the report of a woman being held against her will, are insufficient to justify the officers entering of the defendant's curtilage or Officer Baudler's peering through the defendant's window. In evaluating whether the police are justified in believing exigent circumstances exist, the officers' belief needs only to be reasonable. *United States v. Nord*, 586 F.2d 1288, 1291 n.5 (8th Cir. 1978). In evaluating the officers' actions, the court looks to the circumstances that confronted the police at the time of their actions. *Leveringston*, 397 F.3d at 1116. In the case at bar, Officers Baudler and Beran received a radio report of a woman being held against her will at the residence of the defendant. Although the report originated from an anonymous caller, the report did include the name of the alleged victim, the name of the defendant and the location of his residence. Officer Baudler testified that he normally left typical radio calls to uniformed patrol officers. (Tr. 24:8-9.) However, Officer Baudler believed this call to have high priority. (Tr. 5:15-17.) It is reasonable to expect that Officers Baudler and Beran, upon arriving at the defendant's home, feared a woman's life may be in immediate danger.

5

When the police reasonably believe that a person's life is in danger, the law allows for a warrantless entry of a residence. *Mincey*, 437 U.S. at 392. In the case at bar, the officers did not go so far as to enter the defendant's home but simply entered the curtilage around his home and peered through his window. If the existence of exigent circumstances would justify the warrantless entry into a person's home, then it would follow that the less invasive action of simply entering the defendant's curtilage and looking in his window would also be justified, as is the issue in this case. Accordingly, I find exigent circumstances existed justifying the officers entering of the defendant's curtilage and Officer Baudler's peering through the defendant's window.

**B.   Plain View Doctrine**

The magistrate judge found the plain view doctrine justified the seizure of crack cocaine found in the possession of the defendant. The defendant objects to this finding arguing the plain view doctrine has no application in the case at bar since Officer Baudler could not have viewed the defendant and his actions through the east side window.

An object in plain view of an officer may be seized if the officer has a right to be in the position to have that view and a right of access to the object itself, the incriminating character of the object is immediately apparent, and the seizure is based upon probable cause. *See Harris v. United States*, 390 U.S. 234, 235 (1968) (finding an object in plain view may be seized if the officer has a right to be in the position to have that view and a right of access to the object itself); *Texas v. Brown*, 460 U.S. 730, 737 (1983) and *Washington v. Chrisman*, 455 U.S. 1, 6 (1982) (finding the incriminating character of the object must be immediately apparent); *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) (finding the seizure must be based upon probable cause).

In the present case, Officer Baudler testified that upon reaching the defendant's residence, he entered the defendant's curtilage whereupon he went to the defendant's window and looked into his home.  While looking into the defendant's home, he saw the defendant sitting on a couch holding what appeared to be a bag of crack cocaine.  (Tr. 7:17-19.)  After observing the defendant for several moments, Officer Baudler then moved to the front of the residence where he, along with several other officers, placed the defendant under arrest and seized the bag of cocaine in the defendant's possession.

The actions taken by Officer Baudler in the case at bar fall squarely within the plain view doctrine. As noted above, Officer Baudler's presence on the defendant's property is lawful.  After looking in the defendant's window, Officer Baudler testified to seeing the defendant holding a bag of crack cocaine, a fact immediately apparent to him.  (Tr. 7:18-19.)  Finally, Officer Baudler's observations, made while standing at the defendant's window, established probable cause for the seizure of the cocaine in the defendant's possession.  Because Officer Baudler's actions met all the elements of the plain view doctrine, the court finds the seizure of the cocaine in possession of the defendant justified.

THEREFORE, IT IS ORDERED:

1. Defendant Steven Chaney's objections, Filing No. 30, to the magistrate judge's report and recommendation, are overruled;

2.  The report and recommendation of the magistrate judge, Filing No. 27, is adopted in its entirety; and

3. Defendant Steven Chaney's motion to suppress, Filing No. 16, is denied.

DATED this 20th day of October, 2005.

                              BY THE COURT:

                              s/ Joseph F. Bataillon
                              United States District Judge